**In re EAGLE–PICHER INDUSTRIES, INC., Debtor.**

**Norpak Corporation, Plaintiff–Appellant,**

v.

**Eagle–Picher Industries, Inc., Defendant–Appellee.**

**BAP No. 98–8082.**

United States Bankruptcy Appellate Panel of the Sixth Circuit.

Argued June 2, 1999.

Decided July 20, 1999.

Thomas W. Coffey, Kevin R. Feazell, Cors & Bassett, Cincinnati, Ohio, for Appellant.

Debra A. Dandeneau, Weil, Gotshal & Manges, Miami, Florida, Stephen Karotkin, Weil, Gotshal & Manges, New York City, for Appellee.

Before MORGENSTERN–CLARREN, RHODES, and STOSBERG, Bankruptcy Appellate Panel Judges.

## OPINION

Under 11 U.S.C. § 502(e)(1)(B), Norpak's contingent environmental claim for reimbursement or contribution against Eagle–Picher must be disallowed if Eagle–Picher and Norpak are co-liable to either the Environmental Protection Agency or the New Jersey Department of Environmental Protection and Energy. On a previous appeal of this matter, the United States Court of Appeals for the Sixth Circuit remanded the matter to the bankruptcy court with specific instructions to conduct a *Pioneer/Dix* analysis to determine whether excusable neglect exists to allow either agency an untimely claim against Eagle–Picher. If allowed, either claim would fix the co-liability necessary to disallow Norpak's claim.

On remand, the bankruptcy court again disallowed Norpak's contingent claim, concluding that an environmental settlement agreement entered into while the matter was on appeal gave the EPA a potentially viable claim against Eagle–Picher. The bankruptcy court found that this agreement made a *Pioneer/Dix* analysis unnecessary. Because the bankruptcy court did not follow the instructions of the court of appeals on remand, its order disallowing Norpak's claim is **VACATED** and the case is **REMANDED** to the bankruptcy court with instructions to comply with the previous mandate of the court of appeals.

### I. ISSUE ON APPEAL

The dispositive issue is whether the bankruptcy court followed the instructions of the court of appeals on remand in determining the viability of the claims of the EPA and the NJDEPE.

### II. JURISDICTION AND STANDARD OF REVIEW

■ The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the BAP. A "final order" of a bankruptcy court may be

appealed by right under 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989) (citations omitted). Conclusions of law are reviewed de novo. *Nicholson v. Isaacman (In re Isaacman)*, 26 F.3d 629 (6th Cir.1994). "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *In re Eubanks*, 219 B.R. 468, 469 (6th Cir. BAP 1998) (citing *In re Schaffrath*, 214 B.R. 153, 154 (6th Cir. BAP 1997)).

## III. FACTS

Prior to 1956, Eagle–Picher's lead processing operations at the premises that it owned at 70–76 Blanchard Street, Newark, New Jersey, allegedly caused environmental contamination. Presently, Norpak or a related entity owns the premises. The contamination that Eagle–Picher allegedly caused has never been remediated. Norpak's contingent claim is for contribution or reimbursement for any future liability that it may incur to remediate the contamination that resulted from Eagle–Picher's past ownership and use of the premises.

Norpak filed its proof of claim on the October 31, 1991 claims bar date. Eagle–Picher objected under § 502(e)(1)(B), asserting that Norpak's claim should be disallowed because (1) Norpak's claim is a contingent claim, (2) Norpak is co-liable with it to the EPA and the NJDEPE, and(3) Norpak's claim is for contribution or reimbursement. Norpak disputed Eagle–Picher's second and third contentions.

The bankruptcy court sustained Eagle–Picher's objection to Norpak's claim and the district court affirmed. On appeal, the court of appeals affirmed the conclusion that Norpak's claim is for contribution or reimbursement. *Norpak Corp. v. Eagle–Picher Indus., Inc. (In re Eagle–Picher Indus., Inc.)*, 131 F.3d 1185, 1190–91 (6th Cir.1997). On the co-liability issue, the court of appeals was made aware that the EPA and Eagle–Picher had entered into a settlement agreement during the pendency of the appeal. The court rejected Norpak's argument that because the agreement was not in the record, it should be ignored. Rather, the court held that "the terms of the [settlement] agreement and the circumstances surrounding its negotiation and adoption are bound to be relevant." *Id.* at 1189. Thus the court remanded the "case to the bankruptcy court for a determination of the continued viability of any claims by the [Environmental Protection Agency] or the [New Jersey Department of Environmental Protection and Energy] against Eagle–Picher, taking into account the [settlement] agreement between Eagle–Picher and the [Environmental Protection Agency]." *Id.* at 1191.

On remand, the bankruptcy court determined that the settlement agreement gave the EPA a potentially viable claim against Eagle–Picher, on which Norpak is co-liable. The bankruptcy court disallowed Norpak's claim and Norpak filed this appeal.

## IV. DISCUSSION

■ Eagle–Picher asserts that the bankruptcy court properly disallowed Norpak's claim under § 502(e)(1)(B) because its settlement agreement with the EPA makes it co-liable with Norpak for the clean up costs of the property. Norpak asserts that there is no co-liability because the claims of the EPA and NJDEPE are time-barred despite the agreement.

The court of appeals remanded the case to the bankruptcy court with instructions to determine whether excusable neglect exists to allow either the EPA or NJDEPE a late claim. Specifically, the court of appeals instructed the bankruptcy court to determine "the continued viability of any claims by the EPA or NJDEPE against Eagle–Picher, taking into account the consent agreement between Eagle–

Picher and the EPA." *Eagle–Picher*, 131 F.3d at 1191. Significantly, the court of appeals stated, "It is not clear on the present record whether such a late filing should have been allowed or whether the bankruptcy court necessarily made the right decision under then existing circumstances. *Nor can either of those questions be answered without an analysis of the Pioneer/Dix factors.*" *Id.* at 1189 (emphasis added). See *Pioneer Inv. Serv. v. Brunswick Assocs. Ltd Partnership*, 507 U.S. 380, 381, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *Dix v. Johnson*, 95 B.R. 134 (9th Cir. BAP 1988).

On remand, the bankruptcy court did not conduct a *Pioneer/Dix* analysis. Rather, the bankruptcy court stated:

> Simply put, it is the position of EPI (Eagle–Picher) that the Settlement Agreement gives the EPA the right to file a claim on account of the cleanup of the Norpak property without limitations to time, so that the bar date entered in the consolidated bankruptcy cases is superseded by the Settlement Agreement. It is therefore not necessary to resort to any argument of excusable neglect pursuant to *Pioneer Investment*, to establish that the United States retains the right to file a claim on account of the cleanup of the Norpak property.

*In re Eagle–Picher Indus., Inc.*, Case No. 1–91–00100, slip op. at 3–4 (Bankr. S.D.Ohio Oct. 13, 1998).

Essentially, the bankruptcy court adopted Eagle–Picher's position that the settlement agreement superseded the bar date. However, this position is inconsistent with the mandate from the court of appeals to conduct an analysis of the *Pioneer/Dix* factors. The court of appeals explicitly stated that a determination of the viability of the claims of the EPA and the NJDEPE could not be made without a *Pioneer/Dix* analysis. *Eagle–Picher*, 131 F.3d at 1188. The bankruptcy court erred in disallowing Norpak's claim without conducting the *Pioneer/Dix* analysis that the

court of appeals mandated. Therefore, the case must be remanded.

Significantly, the court of appeals stated:

> [I]t is important to remember that bankruptcy courts are courts of equity. . . . Chapter 11 "provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors." *Pioneer Investment*, 507 U.S. at 389, 113 S.Ct. at 1495(emphasis added). Consequently, bankruptcy courts "are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization." *Id.* (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 527–28, 104 S.Ct. 1188, 1196–97, 79 L.Ed.2d 482 (1984)).

*Eagle–Picher*, 131 F.3d at 1189.

On remand, the bankruptcy court can and should exercise its considerable equitable powers to apply the Pioneer standards to provide a creative resolution that will (1) enforce Eagle–Picher's responsibilities under applicable environmental laws and its settlement agreement with the EPA, (2) protect Eagle–Picher from the double liability that § 502(e)(1)(B) was designed to prevent, and (3) protect against a possible windfall to Norpak. By way of example only, it is noted that a creative solution was suggested in *Al Tech Specialty Steel Corp. v. Allegheny Int'l, Inc. (In re Allegheny Int'l, Inc.)*, 126 B.R. 919, 924 (W.D.Pa.1991), *aff'd. without op.*, 950 F.2d 721 (3d Cir.1991):

> [T]he bankruptcy court can require that any distributions on AL Tech's claim be placed in a trust to be expended on there mediation of the waste sites. Bankruptcy courts are courts of equity, *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 527, 104 S.Ct. 1188, 1196–97, 79 L.Ed.2d 482 (1984), possessing power to issue any order necessary or appropriate to carry out the provisions of the bankruptcy code. 11 U.S.C. § 105(a); *In re Morristown & Erie Railroad Co.*, 885 F.2d 98, 100 (3d Cir.1989). Creation

of a trust to be expended on contingent claims is a frequently used mechanism for insuring that such claims are properly disbursed. *See, e.g., In re Johns–Manville Corp.*, 68 B.R. 618, 625–26 (Bankr.S.D.N.Y.), *aff'd*, 78 B.R. 407 (S.D.N.Y.1987), *aff'd*, 843 F.2d 636 (2d Cir.1988); *In re A.H. Robins Co.*, 88 B.R. 742 (E.D.Va.1988), *aff'd*, 880 F.2d 694 (4th Cir.1989). In the present case, use of a trust would be an effective means of guaranteeing that distributions on AL Tech's claim be used to remediate the waste sites. Such a trust would eliminate the potential for double recovery from the debtor for such remediation.

*See also Dant & Russell, Inc. v. Burlington Northern R.R. Co. (In re Dant & Russell, Inc.)*, 951 F.2d 246, 250 (9th Cir. 1991); *In re Harvard Indus., Inc.*, 138 B.R. 10, 14 (Bankr.D.Del.1992).

The Panel recognizes that in this case, the bankruptcy court previously rejected such an approach when proposed by other creditors. *In re Eagle–Picher Indus., Inc.*, 144 B.R. 765 (Bankr.S.D.Ohio 1992), *aff'd*, 164 B.R. 265 (S.D.Ohio 1994). Nevertheless, in light of the tenor of the opinion of the court of appeals and its confirmation of the bankruptcy court's "broad equitable powers," the suggestion is worthy of fresh consideration.

## V. CONCLUSION

The bankruptcy court's order disallowing Norpak's claim is **VACATED** and the case is **REMANDED** to the bankruptcy court with instructions to conduct the *Pioneer/Dix* analysis mandated by the court of appeals.