In re HILLSBOROUGH HOLDINGS CORPORATION, et al., Debtor.

Jim Walter Homes, Inc.; Mid–State Homes, Inc.; and Best Insurors, Inc., Plaintiffs,

v.

Richard and Mary Bell; Melvin Boyd; Ike and Mary Davis; Ruben and Antonia Hayden; Walestar and Charlie Hutchins; Wiley and Shirley Isaac; Eddie and Edna Jones; Arthur and Ozelle Kendrick; Verdo and Glendora Lewis; Preston and Ellie Madison; Earl Singleton; Perry and Sherry Sullen; Charles and Patricia Washington; Michael Williamson; and Alvin and Brenda Woods, Defendants.

Bankruptcy Nos. 89–9715 to 89–9746, 90–11997–8P1. Adversary No. 98–527.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 29, 2000.

Scott A. Stichter, Tampa, Florida, George W. Walker, III, Montgomery, Alabama, Richard H. Gill, Montgomery, Alabama, for plaintiffs.

Andy D. Birchfield, Jr., Montgomery, Alabama, Chad S. Bowen, Tampa, Florida, David S. Jennis, Tampa, Florida, for defendants.

ORDER ON MOTION FOR PARTIAL SUMMARY TO DETERMINE THAT ANY PUNITIVE DAMAGES CLAIMS HAVE BEEN DISCHARGED

ALEXANDER L. PASKAY, Bankruptcy Judge.

The matter under consideration in these confirmed and substantially consummated Chapter 11 cases is a Motion for Partial Summary Judgment to Determine that Any Punitive Damages Claims Have Been

Discharged, filed by Jim Walter Homes, Inc., Mid–State Homes, Inc., and Best Insurors, Inc., (Debtors). The Motion is filed in an Adversary Proceeding No. 98–527 in which Richard and Mary Bell and twenty-six others are named as defendants (the Alabama Plaintiffs).

In their Complaint, the Debtors seek a determination by this Court that the claims of the Alabama Plaintiffs have been discharged and no longer enforceable against these Debtors by virtue of the Order of Confirmation of the Amended Joint Plan of Reorganization entered on March 2, 1995. The precise title of the Motion is Motion for Partial Summary Judgment to Determine That Any Punitive Damage Claims Have Been Discharged. However, the relief requested in the Motion, as stated in the wherefore clause, is (1) a declaration that any punitive damages related to the Alabama Plaintiffs' postpetition claims are discharged and, (2) and for such other and further relief as may be just.

In Paragraph 10 of the Motion, the Debtors urge that without waiving their argument that all claims of the Alabama Plaintiffs are discharged that the only possible claims that remain for consideration by the Alabama Plaintiffs are claims for compensatory damages. Although the Motion for Partial Summary Judgment are based on the contention that all claims of the Alabama Plaintiffs have been discharged, and a great deal of argument was presented in support of and in opposition to this issue, it is clear that the present Motion presents only one narrow issue. That issue is, are punitive damages allowable at all as a matter of law in bankruptcy?

Before discussing the legal principles which govern the allowance of punitive damage claims in bankruptcy, it should be noted that although the Debtors in their submission speak about the dischargeability of punitive damages, the issue is allowability and not the dischargeability of punitive damage claims. This is so because if punitive damage claims cannot be allowed the question of dischargeability is academic. Only claims which have been allowed may bring in the question of dischargeability, *vel non,* of the claim in question.

The allowance of claims or interest is governed by Section 502 of the Code. Subclause (b) sets forth the type of claims which cannot be allowed or only allowed with limitations, i.e., claims arising from rejection of executory contracts or unexpired leases, Sections 502(a)(6); or damage claims based on termination of employment contracts, Section 502(a)(7). There is nothing in this subclause which deals with claims for punitive damages. However, there is a plethora of case law which deals with this subject, especially in Chapter 11 cases. For instance, this issue received extensive treatment and was raised mostly in the rash of the mass tort cases which flooded the courts beginning in the early eighties. In the case of *In re Allegheny Intern., Inc.,* 106 B.R. 75 (Bankr. W.D.Pa.1989) in opposition to the allowance of claims for punitive damages the following was urged: (1) that a large punitive damage award would frustrate the debtor's reorganization; (2) the debtor would be required to expend significant amount of time and money to litigate claims involving punitive damages; (3) a punitive damage award if allowed would seriously impair the debtor's ability to consummate its Plan of Reorganization; and (4) it would require the debtor to set aside large reserves to pay punitive damage awards if the tort claimants prevail in the litigation.

The *Allegheny* court declined to rule on the issue and concluded that a blanket prohibition against punitive damages at that stage of the case was improvident and it is more appropriate to consider the issue when the claims are actually liquidated.

In the case of *In re A.H. Robins Co., Inc.,* 89 B.R. 555 (E.D.Va.1988), the court considered the "wild card" effect of the

allowance of a punitive damage claim and stated that "the award of punitive damages in a Chapter 11 case has the characteristics of a 'wild card'." This is so because the presence of a wild card would constitute a death knell of any feasible reorganization plan. In *Robins* the court noted that the inability to quantify the potential amount of the debtor's liabilities for punitive damages would make it virtually impossible for the court to determine whether the debtor would be capable of meeting its obligations under the Plan.

In the case of *In re Johns–Manville Corp.*, 68 B.R. 618 (Bankr.S.D.N.Y.1986), *aff'd in part, reversed in part*, 78 B.R. 407 (S.D.N.Y.1987), *aff'd sub nom.*, *Kane v. Johns–Manville Corp.*, 843 F.2d 636 (2d Cir.1988) the court noted that the recovery of punitive damages would be to risk the depletion of the trust assets which was the foundation of the entire Plan of Reorganization. Therefore, the court concluded that it would be inequitable to allow punitive damages on its face. The Court in *Johns–Manville* explained that the purpose of punitive damages is to punish tort feasors and to deter them from any wrongful conduct in the future and in the context of a reorganization, neither purpose would be served by permitting the recovery of punitive damages.

In the case of *Matter of GAC Corp.*, 681 F.2d 1295 (11th Cir.1982) the Eleventh Circuit held that the effect of allowing punitive damage claims would be to force innocent creditors to pay for the debtor's wrongdoing. Such result is clearly inequitable and, therefore, it was appropriate for the Bankruptcy Court to disallow the claims for punitive damages.

While the court in the case of *In re Allegheny International Inc., supra,* noted that the allowance of punitive damages in Chapter 11 cases is neither mandated nor proscribed, it held that it is appropriate to consider the allowance of punitive damage claims until such punitive damage claims have been liquidated. However, the Court in *Allegheny* merely postponed the judg-

ment day and did not consider the ultimate question which was, the impact of the allowance of punitive damage claims on the reorganization process, and the allowability of punitive damage claims.

▪ It appears from the foregoing cases that the courts considering this particular issue emphasized that the allowance of punitive damage claims in a Chapter 11 case is inappropriate if the allowance of such claims would render a determination of the feasibility of the Plan impossible. *In re A.H. Robins, supra,* or would place in jeopardy a confirmed Plan of Reorganization. *In re Johns–Manville, supra.*

▪ None of these factors described above, i.e., feasibly and the debtor's ability to consummate a confirmed plan, are present in the instant matter under consideration. The Plan of Reorganization of these Debtors was confirmed on March 2, 1995. Thus, the question of feasibility of the Plan is academic and moot. The confirmed Plan is either fully consummated or substantially consummated and an allowance of punitive damages will have no negative impact on the consummation of the confirmed plan. The most could be said that the allowance of punitive damages to the Alabama Plaintiffs might negatively impact the future operation of the reorganized Debtors, Jim Walter Homes, Inc., Mid–State Homes, Inc., and Best Insurors, Inc. This, however, by itself in the context of a Chapter 11 case which is still only pending because of appeals which are unresolved, is insufficient basis to grant a blanket denial of the punitive damage claims of the Alabama plaintiffs. For the reasons stated, the Debtors' motion for partial summary judgment is without merit and should be denied.

ORDERED, ADJUDGED AND DECREED that the Motion for Partial Summary Judgment to Determine That Any Punitive Damages Claims Have Been Discharged be, and the same is hereby, denied without prejudice, provided that once these claims are liquidated in the Alabama

State Court, this Court retains jurisdiction to consider whether or not, based on its equitable power, it would be appropriate to allow punitive damage claims in these confirmed Chapter 11 cases.