JAMES L. DENNIS, Circuit Judge,
dissenting:
The underlying legal issue in this case is whether a bankruptcy court may, consistent with the Constitution’s guarantee of due process, hold that a state-law wrongful-death claim based on the death of a housewife, who fatally contracted mesothe-lioma from asbestos fibers on her husband’s work clothes, was discharged in a bankruptcy filed by her husband’s former employer fifteen years before she developed or was aware of any symptom of the disease. In my view, the bankruptcy court in this case erred in failing to recognize that such a result would violate the constitutional guarantee of due process of law. The bankruptcy court was led into this constitutional error by its misinterpretation of our decision in Lemelle v. Universal Manufacturing Corp., 18 F.3d 1268, 1276 (5th Cir.1994), as adopting the “pre-petition relationship test” formulated by other circuits and calling for the discharge of any asbestos-related claim resulting from a victim’s exposure to asbestos by a debtor prior to the debtor’s petition for bankruptcy. Contrary to the bankruptcy court’s reading, however, Lemelle did not address whether an unknown, future claim,[1] such as the housewife’s latent mesothelioma claim in this case, was dischargeable in bankruptcy and it certainly did not hold that this circuit has adopted the pre-petition relationship test for application in bankruptcy cases involving asbestos-related injuries.[2]
Our duty to correct the bankruptcy court’s constitutional errors as well as its misreading of Lemelle is complicated, however, by the plaintiffs’ failure to adequately brief those issues in this court. On appeal, the plaintiffs squarely address only the issue of whether the constructive notice by publication provided to unknown, future claimants, such as the latent mesothelioma victim in this case, passed constitutional muster. Nevertheless, that alleged error inextricably relates directly to, and cannot adequately be addressed without considering, a more fundamental due process issue, *160 viz., whether a latent asbestos claim of an asbestos-exposed, but not yet knowingly injured, person is dischargeable in bankruptcy and, if so, under what circumstances. Therefore, I believe that the plaintiffs have sufficiently preserved and argued all such errors for our review. Even if the majority of this panel refuses to grant the plaintiffs relief because of their deficient appellate briefing, this panel still owes a duty to oversee the orderly development of our jurisprudence, and a duty to future victims of mesothelioma and other latent diseases, to acknowledge and correct, rather than to paper over, the errors plainly evident in the bankruptcy court’s decision below.
In Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Supreme Court considered what notice is mandated by the Due Process Clause. Due process, the Court said, “at a minimum” requires notice and an opportunity to be heard before a court may deprive a person of his or her property. Id. at 313, 70 S.Ct. 652. Personal notice, however, is not always necessary; rather, the Constitution requires “notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.” Id. at 313-14, 70 S.Ct. 652. To determine what form the notice must take, the Mullane Court distinguished between two types of claimants: known and unknown. See id. at 317-19, 70 S.Ct. 652. The Court explained that for claimants “whose interests are either conjectural or future,” “extended searches are not required” and constructive notice by publication is sufficient. Id. at 317-18, 70 S.Ct. 652. The Mullane Court did not indicate, however, that the unknown-claimants category includes asbestos-exposed persons with latent-disease damage that is as yet unknown to those future victims. Although “Mullane allows constructive notice to unknown claimants so long as no other method would be more effective in reaching them, the Court has not endorsed such an approach to claimants who are not only unknown but ‘unselfconscious and amorphous,’ as are future claimants in bankruptcy,” such as Myra Williams with her unknown, latent asbestos claim. Laura B. Bartell, Due Process for the Unknown Future Claim in Bankruptcy — Is This Notice Really Necessary?, 78 Am. BaNKR. L.J. 339, 351-52 (2004) (footnote omitted) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 628, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)); see also Georgene Vairo, Mass Tort Bankruptcies: The Who, the Why and the How, 78 Am. BaNKR. L.J. 93,134 (2004) (“[Njeither Mullane nor any case following it involved claimants who were not only unknown to the party sending the notice but who were in essence unknown to themselves and who therefore would not recognize themselves as the intended targets of the notice even were the notice actually received.”). Not only has the Court never endorsed such an approach, but a majority of the Court has also strongly indicated that requiring only constructive notice to individuals exposed to asbestos but who do not know about either their exposure or the harm that may result would present grave problems. In Amchem Products, Inc. v. Windsor, the Supreme Court considered certification of a class action under Rule 23(b)(3) that included individuals who had been exposed to asbestos but had yet to manifest any injuries. 521 U.S. at 597, 602-03,117 S.Ct. 2231. The Court ruled that the class as certified failed to satisfy Rule 23’s predominance and adequacy-of-representation requirements, id. at 622-28, 117 S.Ct. 2231, and further cautioned that
[m]any persons in the exposure-only category, the Court of Appeals stressed, *161 may not even know of their exposure, or realize the extent of the harm they may incur. Even if they fully appreciate the significance of class notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out.
Family members of asbestos-exposed individuals may themselves fall prey to disease or may ultimately have ripe claims for loss of consortium. Yet large numbers of people in this category— future spouses and children of asbestos victims — could not be alerted to their class membership. And current spouses and children of the occupationally exposed may know nothing of that exposure.
Because we have concluded that the class in this case cannot satisfy the requirements of common issue predominance and adequacy of representation, we need not rule, definitively, on the notice given here. In accord with the Third Circuit, however, we recognize the gravity of the question whether class action notice sufficient under the Constitution and Rule 28 could ever be given to legions so unselfconscious and amorphous.
Id. at 628, 117 S.Ct. 2231 (citation omitted). Although Amchem emphasized the grave question regarding whether class-action notice sufficient under the Constitution and Rule 23 can ever be given to unselfconscious and amorphous individuals exposed to asbestos but who have yet to manifest any injuries, the same serious question exists as to whether notice sufficient under the Constitution can ever be given to workers exposed to asbestos and their families so as to properly discharge their claims in bankruptcy.
Several courts and commentators have also recognized that constructive notice to such unknown — and unknowing — future claimants fails to comport with the guarantee of due process. See, e.g., In re Hexcel Corp., 239 B.R. 564, 571 (N.D.Cal.1999) (stating that publication notice may be sufficient for “creditors who could contemplate that they might have a claim” but reasoning that this is not the case “for a potential creditor who had no way of knowing that it may have a claim against the debtor some time in the future”); Bartell, supra, at 354 (“If they are alive and actually see the notice, [future claimants] could not recognize themselves as affected in any way by the bankruptcy court case and will, therefore, take no action to ensure their interests are represented.”). Unknown, future claimants, even if they receive notice of a bankruptcy proceeding, are often unable to recognize that their rights will be affected by the bankruptcy, for instance because they are unaware that the debtor has exposed them to toxic substances or because they have yet to manifest any injuries by the time the debtor files for bankruptcy. “Even if they fully appreciate the significance of [the] notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether” to participate in the bankruptcy. Amchem, 521 U.S. at 628, 117 S.Ct. 2231. This is especially true for claimants with asbestos-related injuries, which often take years to manifest themselves. See id. at 598, 117 S.Ct. 2231 (noting “a latency period that may last as long as 40 years for some asbestos related diseases”) (internal quotation marks omitted); Kane v. Johns-Manville Corp., 843 F.2d 636, 639 (2d Cir.1988) (“A significant characteristic of these asbestos-related diseases is their unusually long latency period. An individual might not become ill from an asbestos-related disease until as long as forty years after initial exposure. Hence, many asbestos victims remain unknown, most of whom *162 were exposed in the 1950’s and 1960’s before the dangers of asbestos were widely-recognized. These persons might not develop clinically observable symptoms until the 1990’s or even later.”); In re Evans Prods. Co., 2009 WL 2448145, at *8 (Bankr.S.D.Fla. Aug. 6, 2009) (noting that “[djecades might pass before these persons even realize any harm has come to them” from asbestos).
“[W]hen an individual cannot recognize that he or she has a claim in a bankruptcy case and, therefore, cannot make a decision about how to assert that claim, that person is functionally or constructively ‘incompetent’ for purpose of the bankruptcy case.” Bartell, supra, at 366. “These claimants ... have no ability to represent their own interests in the bankruptcy case because they cannot be given the information necessary to enable them to make decisions about those interests.” Id. at 870. Consequently, “[Constructive notice cannot reach [them because they] do not know of their claims.” Id. In other words, “[publication is not notice at all.” Id.
However, “a bankruptcy court may appropriately appoint a guardian ad li-tem” — or, stated differently, a future-claims representative — “to represent their interests in an adversary proceeding under [Bankruptcy] Rule 7017.” Id. at 367; see Fed. R. BanxR.P. 7017 (stating that Federal Rule of Civil Procedure 17 “applies in adversary proceedings”); Fed. R. Civ. P. 17(c) (permitting “a general guardian,” “a committee,” “a conservator,” or “a like fiduciary” to “sue or defend on behalf of a minor or an incompetent person” and providing that “[t]he court must appoint a guardian at litem — or issue another appropriate order — to protect a minor or incompetent person who is unrepresented in an action”); cf. 11 U.S.C. § 524(g).[3] Not only could notice to a future-claims representative appointed in this manner satisfy due process, see, e.g., In re Schicke, 97 Fed.Appx. 249, 251 (10th Cir.2004) (notice to judgment creditor’s attorney satisfied due process); In re De la Cruz, 176 B.R. 19, 23-24 (9th Cir.BAP 1994) (notice to attorney for guardian of minor creditor satisfied due process); In re Chi, Rock Island & Pac. R.R. Co., 788 F.2d 1280, 1281-83 (7th Cir.1986) (notice to minor creditor’s mother satisfied due process), but failure to appoint a future-claims representative likely means that unknown, future latent-disease claims may not, consistent with due process, be discharged, see In re Chance Indus., Inc., 367 B.R. 689, 708-10 (Bankr.D.Kan.2006) (concluding in the alternative that “a confirmation order that discharges the claims of an unknown future tort claimant without any notice [to the creditor or to a future-claims representative] and an opportunity to be heard violates due process” (citing Bartell, supra, at 354-56)); Bartell, supra, at 370; see also Jones v. Chemetron Corp., 212 F.3d 199, 209 (3d Cir.2000) (“[I]f a potential claimant lacks sufficient notice of a bank *163 ruptcy proceeding, due process considerations dictate that his or her claim cannot be discharged by a confirmation order. Such due process considerations are often addressed by the appointment of a representative to receive notice for and represent the interests of a group of unknown creditors.”) (citations omitted); cf. Covey v. Town of Somers, 351 U.S. 141, 146, 76 S.Ct. 724, 100 L.Ed. 1021 (1956) (concluding that “[n]otice to a person known to be an incompetent who is without the protection of a guardian” does not satisfy Mul-lane). Recognizing this, many courts have discharged unknown, future claims but only when constructive notice has been coupled with the appointment of a future-claims representative. See, e.g., In re Johns-Manville Corp., 68 B.R. 618, 626-27 (Bankr.S.D.N.Y.1986), aff'd 78 B.R. 407 (S.D.N.Y.1987), affd sub nom. Kane, 843 F.2d at 636; cf. Jones, 212 F.3d at 209-10 (holding that if a claimant who was unborn at the time of confirmation had a “claim,” it was not discharged when no representative had been appointed to represent his interests in the bankruptcy).
These and other authorities[4] recognize the grave due process problems presented *164 by the discharge of unknown — and unknowable — future claims, such as Myra Williams’s latent asbestos claim, when constructive notice to individuals exposed to toxic substances but who lack knowledge of either their exposure or any as-yet unaccrued injury is effectively no notice at all. Therefore, neither Lemelle nor Mul-lane — which did not consider notice with respect to unknown and unperceivable future claims — should be read as holding that due process has been satisfied when all that is provided is constructive notice to exposure-only individuals who may be unaware of their exposure, unaware of the severe harm that may ultimately result, and unable to recognize that their rights may be affected in bankruptcy. Rather, careful thought and a context-specific approach is required before concluding that unknown, future claimants have been provided with notice and an opportunity to be heard such that their claims may, consistent with the guarantee of due process, be discharged. See In re Grossman’s Inc., 607 F.3d 114, 127 (3d Cir.2010) (“Whether a particular claim has been discharged by a plan of reorganization depends on factors applicable to the particular case[.]”).
The record in this case fails to demonstrate that Myra Williams was aware of either her exposure to asbestos dust and fibers or that she might someday grow ill and die as a consequence of that exposure. Under these circumstances, she was functionally incompetent to receive notice of Placid’s bankruptcy because, even if she had in fact received notice of the proceedings, she would not have been able to recognize their effect on her or to understand that her rights could be affected by them. And because there was no future-claims representative to represent her interests, the bankruptcy court erred by concluding that she received constitutionally adequate notice that her claim would be discharged in the bankruptcy if she did not participate in the proceedings. In sum, constructive notice by publication to asbestos-exposed individuals with unmanifested or latent mesothelioma, without appointment of a representative for such future claimants, does not satisfy due process. As the Court said in Mullane, “[w]e have before indicated in reference to notice by publication that, ‘Great caution should be used not to let fiction deny the fair play that can be secured only by a pretty close adhesion to fact.’ ” 339 U.S. at 320, 70 S.Ct. 652 (quoting McDonald v. Mabee, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608 (1917)).
For these reasons, I respectfully dissent.[5]

. For the purpose of this opinion, and unless otherwise stated, “unknown, future claim” refers to the future claim of an asbestos-exposed individual whose disease has not manifested itself by the time of the bankruptcy filing. In other words, it is a claim that is unknown to either the debtor or the potential creditor at that time.

. Because there was no evidence in the record regarding whether the claimant, the mother of two men injured in mobile-home fire, had purchased or acquired an allegedly defective mobile home from the debtor, a manufacturer of such homes, the Lemelle court concluded:
Where, as here, the injury and the manifestation of that injury occurred simultaneously — more than three years after [the debtor] filed its petition and more than two years after the plan was confirmed, we think that, at a minimum, there must be evidence that would permit the debtor to identify, during the course of the bankruptcy proceedings, potential victims and thereby permit notice to these potential victims of the pendency of the proceedings. This record is devoid of any evidence of any pre-petition contact, privity, or other relationship between [the debtor], on the one hand, and [the mother] or the decedents, on the other. We think the absence of this evidence precludes a finding by the district court that the claims asserted by [the mother] were discharged in [the debtor]'s bankruptcy proceedings.
18 F.3d at 1277 (citation omitted). In other words, this court had no occasion to adopt a definitive test defining a “claim” for the purposes of § 101(5)(A) of the Bankruptcy Code— much less one with respect to unknown, future mesothelioma claimants — because it was unnecessary for the disposition of the case.

. "Under § 524(g), a court-appointed fiduciary stands in for ... future asbestos claimants, and the court ensures that any proposed plan is fair to them.” In re Plant Insulation Co., 734 F.3d 900, 906 (9th Cir.2013) (citing 11 U.S.C. § 524(g)(4)(B)(i)-(ii)). Although Congress enacted § 524(g) in 1994 — six years after Placid's bankruptcy — Congress did so "in light of the approach taken in the celebrated Johns-Manville bankruptcy case,” id. at 905, which pre-dated confirmation of Placid's 1988 plan of reorganization, see In re Johns-Manville Corp., 68 B.R. 618, 626-27 (Bankr. S.D.N.Y.1986), aff'd 78 B.R. 407 (S.D.N.Y. 1987), off d sub nom. Kane, 843 F.2d at 636. The bankruptcy court was therefore able to appoint a future-claims representative at the time of Placid’s bankruptcy. Regardless, the bankruptcy court's chief error in this case stems from neglecting to recognize that discharging Myra Williams’s unknown, future mesothelioma claim based on constructive notice alone failed to comport with the requirements of due process.

. See Wright v. Owens Corning, 679 F.3d 101, 108 n. 7 (3d Cir.2012) ("expressing] no opinion on the broader issue of whether discharging unknown future claims comports with due process” but stating that "[b]ecause a future claims representative was not appointed in these bankruptcy cases, we leave open whether, when [a future-claims] representative provides persons with unknown future claims an opportunity to participate in the bankruptcy case through that representation, they are afforded due process through otherwise adequate notice to the future claims representative” (citing Jones, 212 F.3d at 209; Bartell, supra, at 340)); In re Grossman’s Inc., 607 F.3d 114, 127-28 (3d Cir.2010) ("In determining whether an asbestos claim has been discharged, the court may wish to consider, inter alia, the circumstances of the initial exposure to asbestos, whether and/or when the claimants were aware of their vulnerability to asbestos, whether the notice of the claims bar date came to their attention, whether the claimants were known or unknown creditors, whether the claimants had a colorable claim at the time of the bar date, and other circumstances specific to the parties, including whether it was reasonable or possible for the debtor to establish a trust for future claimants as provided by § 524(g).”); cf. Fogel v. Zell, 221 F.3d 955, 960-61 (7th Cir.2000) (questioning whether exposure-only asbestos claimants possess a "claim” under the Bankruptcy Code and reasoning that "[i]t seemed arbitrary to devote the entirety of the estates of the bankrupt asbestos manufacturers to compensating those sufferers whose diseases had happened to manifest themselves before rather than after (perhaps shortly after) the bar dates set in the various bankruptcy proceedings”); In re Chateaugay Corp., 944 F.2d 997, 1003-04 (2d Cir.1991) ("Accepting as claimants those future tort victims whose injuries are caused by pre-petition conduct but do not become manifest until after confirmation, arguably puts considerable strain not only on the Code’s definition of 'claim'/ but also on the definition of 'creditor — an ‘entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor.’ " (quoting 11 U.S.C. § 101 (9)(A))); In re UNR Indus., Inc., 725 F.2d 1111, 1120 (7th Cir. 1984) (noting the "difficult and far-reaching questions” concerning whether future asbestos victims have pre-petition claims); In re Hexcel Corp., 239 B.R. 564, 567 (N.D.Cal.1999) (holding that "[a]ny future, unknown claim that could not have been reasonably contemplated does not fall within the purview of [§ ] 101(5) and must not be discharged, even if the conduct giving rise to the claim took place before the bankruptcy proceedings” and reasoning that "[i]t would be incongruent for the Code to provide so extensively for notice to parties affected by the bankruptcy proceedings, yet to define a pre-petition claim under [§ ] 101(5) so broadly as to adversely affect the interests of those who could not possibly have notice of their rights and interests”); In re Evans Prods. Co., 2009 WL 2448145, at *7-10 (Bankr.S.D.Fla. Aug. 6, 2009) ("[T]he extremely long latency period for asbestos-related illness means that[ ] ... [some victims] will have no knowledge of their exposure or their illness, and cannot be said to have had any cognizable relationship with the debtor, or *164 any identifiable injury at the time of the bankruptcy.”).

. Additionally, I believe that the majority also errs in attempting to put a gloss on what constitutes a ‘‘known” claim under Mullane. In Mullane, the Court said:
As to known present beneficiaries of known place of residence, however, notice by publication stands on a different footing. Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency.
Id. at 318, 70 S.Ct. 652. Nowhere in Mullane does the court say that a claim is not known unless the injury giving rise to it is "manifested” or “actual.” Compare, e.g., ante, at 155, 156. At most, the Court indicated that a state may "dispense with more certain notice to those beneficiaries whose interests are either conjectural or future or, although they could *165 be discovered upon investigation, do not in due course of business come to knowledge of the common trustee.” Id. at 317, 70 S.Ct. 652.