**RECORD IMPOUNDED**

---

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

---

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5390-17T3

L.D.L.,

    Plaintiff-Respondent,

v.

D.J.L.,

    Defendant-Appellant.

_____

Submitted May 20, 2019 – Decided June 12, 2019

Before Judges Haas and Susswein.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FV-15-1837-18.

Villani & De Luca, attorneys for appellant (Benjamin M. Hoffman, on the briefs).

Bronzino Law Firm, LLC, attorneys for respondent (Peter J. Bronzino and Alexander M. Jimenez, on the brief).

PER CURIAM

Defendant D.J.L. appeals from a June 2018 final restraining order (FRO) entered in favor of plaintiff L.D.L. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. The sole issue raised on appeal is whether the trial court had personal jurisdiction over defendant.

For the reasons that follow, we conclude that the trial court had personal jurisdiction based on two independent circumstances. First, defendant submitted to the jurisdiction of the State of New Jersey by appearing in court, by declining the trial judge's invitation for an adjournment to seek the services of counsel, and by participating fully in the plenary hearing. Second, even if defendant had not appeared in this State, the multiple phone calls he made to plaintiff after she had fled to New Jersey satisfy the "minimum contacts" required to establish personal jurisdiction. Accordingly, we affirm the grant of the FRO.

## I.

We derive the following facts from the record. The parties were married in April 2016 and resided in Roanoke County, Virginia. As of May 2018, the parties planned to get a divorce. Plaintiff no longer resided in the marital home and moved to New Jersey to reside with her father. During the month of May,

A-5390-17T3

plaintiff often drove from New Jersey back to the marital home in Virginia to collect her belongings.

On May 31, 2018, at about 8:00 a.m., defendant arrived at the marital home just as plaintiff was leaving the residence in her car to return to New Jersey. Defendant attempted to wave plaintiff down, but she drove around him. Defendant got into his car and pursued plaintiff. While stopped at a traffic light, defendant repeatedly bumped the back of plaintiff's car with his car. Defendant got out of his car and started to bang his fists on plaintiff's window while saying "I'm gonna kill you" and "revenge is mine." Once the light turned green, defendant returned to his car and continued his pursuit of plaintiff, following her onto an interstate highway. Plaintiff estimated that defendant followed her for approximately twenty minutes to a half hour and for about fifteen to twenty miles before finally giving up the pursuit.

Defendant later texted plaintiff "Game on," and left a voicemail stating, "Hey, had a great time this morning. Can't wait to do it again. See you soon. Love you bye." While plaintiff was in New Jersey, at around 10:30 p.m., plaintiff called defendant at defendant's request. At one point, plaintiff attempted to terminate the telephone conversation by stating, "I wanna go. I'm gonna go[,]" to which defendant replied "I'll see you soon." Plaintiff told

defendant that he will not see her again and he responded by saying, "Yes, you will. Oh, yes, you will." Plaintiff ceased all communication with defendant, but defendant attempted to contact plaintiff by phone and left several voicemail messages over the course of the next couple of days. Plaintiff testified that she was afraid of defendant due to the history of past abuse and his unpredictability due to his post-traumatic stress disorder.

The next day, plaintiff filed a domestic violence complaint in Ocean County, New Jersey, pursuant to the PDVA. The FRO hearing was held on June 11, 2018, before the Honorable Valter H. Must, P.J.F.P. Both parties appeared pro se and both were advised by Judge Must that they could request an adjournment to afford an opportunity to seek the assistance of counsel. Both parties declined the opportunity to request an adjournment and both indicated that they were prepared to proceed with the FRO hearing.

At the beginning of the hearing, defendant remarked, "My only question, your Honor, is, you know, it happened in Virginia. She came here. I don't understand." The judge explained that he could not give legal advice and again told defendant that he would be willing to adjourn the matter to give defendant an opportunity to obtain or consult with legal counsel. Defendant did not request

an adjournment and stated that he was aware of the ramifications should a FRO be entered against him. The court continued with the hearing.

At the conclusion of the hearing, the court found that jurisdiction was proper in New Jersey because plaintiff had fled from Virginia. See N.J.S.A. 2C:25-28(a). The court also found that defendant had submitted to the personal jurisdiction of the State of New Jersey by appearing in court. With regard to the substance of the plenary hearing, the court found plaintiff's testimony to be more credible than defendant's testimony. The court concluded that plaintiff had not established by a preponderance of the evidence that defendant had committed the alleged predicate act of criminal mischief. The court did find, however, that plaintiff had proven by a preponderance of the evidence that defendant had made a terroristic threat under N.J.S.A. 2C:12-2, and had committed harassment in violation of N.J.S.A. 2C:33-4. The court also found that plaintiff was in need of the protection of a restraining order to protect her from immediate danger and further abuse, whereupon the court entered the FRO.

II.

Defendant on appeal does not contest the trial court's factual findings. Nor does defendant contest that the court had subject matter jurisdiction over the

A-5390-17T3

domestic violence incident. The sole issue raised in this appeal is whether the court had personal jurisdiction over defendant.

To address that issue, we first consider the legal principles governing this appeal, including the standard of review that we apply. The question as to whether a court has personal jurisdiction over a party is a question of law, and thus the standard of review is de novo. YA Global Investments., LP v. Cliff, 419 N.J. Super. 1, 8 (App. Div. 2011). Defendant did not formally raise the issue of personal jurisdiction prior to or during the FRO hearing.[1] As such, we apply the plain error standard to determine whether the trial court's exercise of jurisdiction and ensuing issuance of the FRO was "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2.

The judgment of a court lacking personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment. Pennoyer v. Neff, 95 U.S. 714

---

[1] Defendant on appeal acknowledges that the question he posed to the trial court at the outset of the FRO hearing "may not be seen as a formal objection." He nonetheless contends that he "raised the issue of the events associated with the restraining order occurring in Virginia and appeared to be confused as to why the matter was occurring in New Jersey." Defendant's question to the trial court seems to pertain more to the issue of subject matter jurisdiction rather than personal jurisdiction. In any event, we do not interpret defendant's question as constituting an objection to the FRO hearing on jurisdictional grounds, especially given that defendant declined the court's repeated offer to adjourn the hearing so that defendant could obtain counsel.

A-5390-17T3

(1877). However, a state court's assertion of personal jurisdiction does not violate due process if the defendant has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945) (quoting Miliken v. Meyer, 311 U.S. 457, 463 (1940)); A.R. v. M.R., 351 N.J. Super. 512, 519 (App. Div. 2002). "The 'minimum contacts' requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980)). The evaluation of whether a defendant has the requisite minimum contacts with New Jersey is done on a case-by-case basis. Shah v. Shah, 184 N.J. 125, 138 (2005).

Unlike subject matter jurisdiction, personal jurisdiction can be waived. Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee, 456 U.S. 694, 703 (1982) (finding that "[b]ecause the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."); see YA Global Investments, 419 N.J. Super. at 9 (concluding that "[p]ersonal jurisdiction is a 'waiveable right,' that is, a non-resident defendant may choose to consent to the jurisdiction of a particular court."). Furthermore,

and of particular importance in this case, an individual can submit to the jurisdiction of the court by appearing before the court and failing to raise the defense of lack of jurisdiction. Ins. Corp. of Ir., 456 U.S. at 703-04; see McDonald v. Mabee, 243 U.S. 90, 91 (1917).

In J.N. v. D.S., 300 N.J. Super. 647 (Ch. Div. 1996), the defendant sought to dismiss the complaint for lack of both subject matter and personal jurisdiction. The court explained:

> Should the abuser choose to submit to the jurisdiction of the State of the New Jersey, he/she would be entitled to a hearing where the victim and the alleged abuser would be afforded the opportunity to testify, present witnesses and cross[-]examine those testifying against them before a final order would be entered. Should the abuser choose not to have the matter adjudicated in the courts of the State of New Jersey, there would be no final restraining order entered on the merits, but the victim would have the protection needed so long as the victim remains in the State of New Jersey[2]. Nothing compels the abuser to answer the complaint in New Jersey and no penalties can be entered or imposed against the abuser by default.
>
> [Id. at 651.]

---

[2] A domestic violence victim can be granted an ex-parte temporary restraining order that can remain in effect indefinitely. See Shah, 184 N.J. at 143 (affirming that "'[a]n order for emergency, ex parte relief…shall remain in effect until a judge of the Family Part issues a further order.' N.J.S.A. 2C:25-28(i).").

## III.

We next apply these legal principles to the particular circumstances of this case. Although defendant was not compelled to answer the complaint in New Jersey, he drove from Virginia to New Jersey, appeared in court, repeatedly declined the opportunity to seek counsel, confirmed that he understood the ramifications of the FRO, and proceeded to engage in a plenary FRO hearing where he was given the opportunity to testify and cross-examine plaintiff. In doing all of that, defendant relinquished the defense of lack of personal jurisdiction and submitted to the jurisdictional authority of the court.

Defendant, who is now represented on appeal, contends that he should not be deemed to have waived the jurisdictional argument because he was unrepresented and thus unable to make a knowing waiver of his constitutional rights. Defendant cites to no legal authority, however, for the proposition that a defendant appearing pro se does not waive the defense of lack of personal jurisdiction when he or she elects to forego an offered adjournment and decides instead to go forward with the FRO hearing. Nor does defendant cite to any legal authority for the proposition that the trial court was obligated to conduct a waiver colloquy similar to a guilty plea in a criminal matter. We appreciate the challenges facing pro se litigants in domestic violence matters. However,

9

having made the decision to proceed without counsel by declining the court's offer of an adjournment on no less than three occasions during the hearing, defendant is hard pressed to argue on appeal that he did not know to make legal arguments that an attorney might have made on his behalf.

The situation would have been different if defendant had taken advantage of the opportunity to secure a continuance. In that event, his limited appearance in court to ask for an opportunity to obtain legal counsel might not have constituted a waiver of the defense of lack of personal jurisdiction, and the jurisdictional issue might instead have been preserved for his counsel to litigate before the trial court. That is not what happened here. By declining the court's invitation to adjourn the matter and by proceeding to fully litigate the domestic violence complaint on its merits, defendant left the trial court with no choice but to conclude that defendant had waived any potential jurisdictional defense.

We see no due process violation in holding a defendant to his election to proceed to trial without counsel. Although due process does not require the appointment of counsel for indigent defendants, it "does allow litigants a meaningful opportunity to defend against a complaint in domestic violence, which would include the opportunity to seek legal representation, if requested." D.N. v. K.M., 429 N.J. Super. 592, 606 (App. Div. 2013). Defendants, of course,

also have the right to forego legal representation and proceed pro se, something that occurs frequently in domestic violence cases in this State.

When a defendant in a domestic violence matter elects to go forward with the plenary hearing without counsel after having been given an opportunity to obtain an attorney, our legal system must proceed on the assumption that the unrepresented defendant is competent to protect his or her own legal interests and to make binding litigation decisions, including decisions as to potential legal and factual defenses. Were it otherwise, all FROs entered against pro se defendants would be subject to reversal if they later asserted on appeal that they did not fully appreciate the significance of their litigation decisions. The point simply is that once a defendant declines the opportunity for an adjournment to obtain counsel, the trial court must proceed as if the litigant knows the law and the legal ramifications of his or her strategic and tactical trial decisions, notwithstanding that an attorney might have made different decisions and presented different defense arguments.

We therefore conclude that defendant in this case waived the lack-of-personal-jurisdiction defense and submitted to the jurisdiction of the court by deciding to allow the FRO plenary hearing to go forward. Nevertheless, even if we were to accept defendant's argument that he did not knowingly waive the

A-5390-17T3

lack-of-personal-jurisdiction defense, and even if he had never set foot in this State, there still would be an independent basis for finding personal jurisdiction. This was not a situation as in Shah where it was "conceded that defendant ha[d] zero contacts with the State of New Jersey." 184 N.J. at 139. Rather, defendant made several phone calls to plaintiff after she had returned to New Jersey and after she told him that she did want to communicate with him. This was purposeful conduct directed at a person who defendant knew or reasonably should have known was residing in New Jersey. Those purposeful actions satisfy minimum contacts with this State necessary to vest the trial court with jurisdiction to consider plaintiff's terroristic threat and harassment complaint under the PDVA. See A.R. v. M.R., 351 N.J. Super. 512, 519-29 (App. Div. 2002) (holding that defendant's placement of telephone calls to the plaintiff in this State gave New Jersey jurisdiction over the defendant, even though the defendant placed the calls while he was in Mississippi and even though the content of those calls could not be characterized as violations of the PDVA).

For the foregoing reasons, we conclude that the trial court had personal jurisdiction over defendant and properly granted the FRO.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5390-17T3